Beacom, J.
Ruling on defendant’s motion to direct a verdict for defendant.
In February, 1903, plaintiff was a gardener in the vicinity of Cleveland and defendant was a seedsman doing business in that city. About that date plaintiff went to store of defendant and asked for four pounds of Mammoth Yellow Golden Bush Squash seed, and for two pounds of Long Island Beauty Nutmeg Melon seed. Defendant gave plaintiff four one-pound packages of the first named seed with the name asked for printed upon the package, and also gave two pounds of the last named seed with the name asked for printed upon the package. For purpose of brevity, I shall deal only with the squash seed, because whatever ruling the court malees as to 'the one must be made as to the other. When plaintiff asked for squash seed of the named variety, defendant said he had it, that it had been raised for him, that it was what the plaintiff wanted. The seeds were delivered to plaintiff, and the appearance was
*123 the same as tliat of the seeds asked for. The plaintiff, a gardener of forty years experience, could not perceive that they were not the seeds asked for. The seeds were planted and grew, but produced a different squash from that asked for and from that named upon the boxes in which the seeds were contained. Plaintiff seeks to recover from defendant the loss which he suffered by reason of the fact that the squash that grew was inferior to that of which he thought he was buying the seeds. These are the facts. There are two additional facts which will bo stated later when I come to the law questions.
I now shall consider the law applicable to these facts, and shall do so under three heads:
First. The general proposition, does a seedsman who gives a package marked with the name of a variety asked for warrant that from these seeds there will grow, if they grow at all, that variety? It seems to me that the law may be different in the case of a seedsman in a large city selling and delivering seeds, from what it is where the seeds are bought from a farmer or a gardener who sells what he has grown. Without evidence on the subject, a court must not be blind to the ordinary facts of life, and the facts about the business of a seedsman in a large city are, that he handles chiefly goods which he gets from others, some of them from foreign countries. The evidence in this ease is explicit that defendant did not himself produce these seeds. He said to plaintiff “they were raised for me.” In other words, “I did' not produce them, I got them from the producer”; and while it is not of much or any importance in this case, it might in some cases be important to determine whether the seeds were sold by a person in the commercial business of selling seeds or by a gardener or a farmer selling that which he himself produced. The rule manifestly must be different. If one go to a farmer and’ ask him for certain seeds, the natural inference, the one which the purchaser has a right to draw’ is that the seeds furnished are those which the farmer himself hás taken from the squash, and the ease would be very different from that of a man who gets his material, perhaps in carload lots, from foreign states and foreign countries.
*124 Passing from the character of defendant’s business and the manner in which he handles seeds, we come to the subject of the seeds themselves. This is the determining thing in this case. And here we must recognize the facts of vegetable life, even without any evidence. We all know that no human being can take those seeds that were sold and tell what variety of the species they belong to until the fruit is ripened. We know that no one can tell by simple inspection whether the seed is alive or dead, whether or not it will germinate. We know that farmers in the spring time, in order to know whether or not seed will grow, put some of it in water to see whether or not it will germinate or sprout, 'as they call it. That is the sort of subject-matter that is being dealt with here. It is something of which the life and character is hidden and in mystery. No amount of diligence on the part of any of us would enable us to take these 'seeds as they were brought into this court room yesterday and tell what they would produce. In this case a special variety of squash seed was asked for. We all know that varieties are not permanently fixed qualities1; that under different conditions of soil and climate they quickly change if not carefully protected. We know, for instance, that if a sued be planted in one lot and in a nearby lot there be a different variety of the same species the insects will fiy from one to the other and carry the pollen from one to the other; and while one variety is planted a different variety is produced. Take the ordinary sweet, corn that is used for the table and plant it near a field of common yellow corn and the first season the sweet corn will deteriorate by the transmission of the pollen, by insects or by the wind, from the other field.
Considering the nature of this man’s business, considering the nature of the subject-matter with which he was dealing, it seems clear that if all that had been done were what I have thus far enumerated, this court is of opinion there would be no warranty that the product would be Mammoth Golden" Yellow Bush ’Squash.
The court is also of opinion that the conversation related in the store there does not alter the rights of the parties. AYhat *125 is related to have been- said by the defendant would amount only to the printing the name on the box; a certain variety was asked for, and he said in substance “I have it,’’ that is substantially all there was of it, and so I think the parties stand in this case in the position of any seedsman, who, when a certain variety of seed is asked for, hands it out with the name printed on .the package, and I am of opinion that a seedsman so doing does not warrant those seeds. To hold that he does would be to make his business a most perilous one. If a seeds-man were held under these conditions to warrant that when a person asks him for Mammoth Golden Yellow Bush Squash that is what will be produced when the harvest comes, then this business is one of excessive risks. No one would undertake the perils of a business of that kind if that were the rule.
Second. I have thus far stated this ease most favorably to plaintiff. The words “Mammoth Golden Yellow Bush Squash’-’ were not the only words upon the boxes containing these seeds. There was also this printed matter: “We use all possible care and precaution to have our seed pure and reliable, but we do not in any case warrant or guarantee them. If the purchaser dpes not accept them on these conditions, they must be returned a.t once. ” I am of opinion that there was a contract in writing between these parties. The whole terms of this transaction were set out there. The dealer did not simply say “Here is Mammoth Golden Yellow Bush Squash seed.” The plaintiff can not pick out the words of that printed matter that are favorable to himself, but must accept them all. If the evidence sought to be introduced were that defendant expressly said in words at that time “I warrant that these seeds are such as they are marked,” this ought to be excluded from the evidence. There is a contract in writing between the parties. It can not be added to or contradicted by oral evidence. Therefore, in this view of the case, the court would grant the motion to direct a verdict for defendant.
In the third place, it appears that plaintiff and his son went to defendant’s store with a list of seeds which the son obtained from the defendant’s catologue of seeds. On page *126 .2 of defendant’s catologue, near the top thereof, is some printed matter in large type and in heavy faced letters. The plaintiff says he does not remember whether or not he ever read it; but it is admitted that on the former trial of this case he said he probably had read it. I think the only proper finding from that state of evidence is that he did read it, and it reads thus:
“Warranty. — We warrant that all seeds sold by us shall prove to be as represented to this extent, that should they prove otherwise we will replace them or send other seeds of the same value. ’ ’
These seeds were bought under a contract of which this is a part, the parties thereby’ in that contract liquidated their damages. They stipulated that if the seeds were not as represented the defendant would return what had been paid for them; that is the substance of it. The undisputed evidence is that nothing has ever been paid for them and therefore the parties having made a contract liquidating their damages at the price of the seeds, .and the seeds never having been paid for, the damage in this case is nothing.
To re-state in the inverse order: In the first piac’e this contract in the catalogue stipulates what the damage of the plaintiff shall be, and it stipulates the damages to be the value of the seeds, and the seeds not having been paid for, the damage is nothing. In the second place, the entire printed matter on this package constitutes a written contract between the parties and by that contract the plaintiff was expressly, clearly told that there was no warranty of these seeds. In the third place and as a genera] rule of law, if a person goes into a seed store and asks for a variety of a species of seeds and they are given to him without comment, with the name printed on the package in which they are contained, there is no warranty whatever. I take it the rule is that this defendant, like every other person who deals with his fellows, must exercise ordinary care to see that that which he ostensibly sells is that thing. There is no evidence in this ease that defendant failed to exercise ordinary care. Therefore, gentlemen of the jury, all questions of fact are for you and all questions of *127 law are for the court, and whether or not there is any evidence is a question of law and not a question of fact.
C. A. Neff, for plaintiff.
M. B. Excell, for defendant.
The court directs you to bring in a verdict for defendant. Plaintiff excepts.